# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **GALE ROBBINS,** | |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM DECISION** |
| **JEFF MERRELL, a Uintah County Sheriff, in his individual and official capacities; JOE McKEA, in his individual an official capacities; DAVID FAIREY, a Uintah Country Deputy Sheriff, in his individual and official capacities; UINTAH COUNTRY and JOHN DOES 1–5;** | **Case No. 2:15-cv-00156-DBP** **Magistrate Judge Dustin B. Pead** |
| **Defendants.** | |

## INTRODUCTION

The parties consented to this Court's jurisdiction under 28 U.S.C. § 636(c). (ECF No. 16.) Plaintiff Gale Robbins ("Plaintiff") brings this suit seeking damages under § 1983. Plaintiff claims he was deprived of federal due process, that he was harmed by Uintah County and Sheriff Jeff Merrell's ("Merrell") failure to train Deputy David Fairey ("Fairey"), and that he was deprived of his state due process rights. (*See* ECF No. 2.) The case is presently before the court on Defendants' Motion for Summary Judgment. (ECF No. 28.) The motion is fully briefed and the court heard oral argument on April 25, 2017. (ECF Nos. 29, 36, 39.)

## UNDISPUTED FACTS

The parties' briefing reveals the following facts are undisputed, unless otherwise noted. Plaintiff has been employed with the Uintah Country Sheriff's Department for nineteen years. He is presently a corporal.

**August 1, 2013, Incident**

On August 1, 2013 an incident took place for which Plaintiff was later disciplined. At the time, Plaintiff was a sergeant and a supervisor at the Uintah County Courthouse with six years of experience in that role. On August 1, 2013, Plaintiff was supervising Deputy Tina Menuey, Deputy Brad Draper, and Defendant Fairey. Plaintiff and Deputy Draper were working together in a jury trial proceeding on the second floor of the courthouse. Plaintiff assigned Fairey to work security at the entrance of the courthouse.

Deputy Menuey was assigned to work as the bailiff for Juvenile Court Judge Larry Steele. At approximately 2:10 p.m., Judge Steele ordered 16-year-old female S.K. into custody. Deputy Menuey locked S.K in the holding cell adjacent to Judge Steel's courtroom. The holding cell is monitored by video from a security office the deputies use. Deputy Menuey was responsible to ensure S.K. was taken to a juvenile detention center before court closed that day. Deputy Menuey did not do so. (*See* ECF No. 36 at 2–3.) Instead, when Judge Steele finished his last hearing at 5:30 p.m., Deputy Menuey radioed to Plaintiff asking if she could go home. Plaintiff did not speak with Deputy Menuey, but "clicked" his radio to indicate Deputy Menuey could go home. She left at 6:00 p.m. The parties dispute whether Fairey shared responsibility with Deputy Menuey to transport S.K. (ECF No. 36 at 2–3.)

Around 6:30 pm., the jury on the second floor returned its verdict. Plaintiff and Deputy Draper escorted various individuals to their cars, cleaned up the courtroom, and then met Fairey downstairs by the front door. Plaintiff asked Fairey if everybody was out of the court so the deputies could go home. Fairey answered the court was clear. Plaintiff then entered the security office and shut down the monitors that display video feeds from cameras all over the courthouse. While these monitors are capable of displaying video feed from the holding cell where S.K. was

held, they were not displaying that particular video feed at the time. Plaintiff did not switch the monitors to the holding-cell feed as he ordinarily did. Plaintiff did not physically check the holding cell or instruct anyone else to check it. Plaintiff said to Fairey and Deputy Draper, "Let's get the hell out of here." (ECF No. 28 at 9.) Plaintiff, Fairey, and Deputy Draper locked the courthouse and left for the day.

Around 10:40 p.m. a member of the court's cleaning staff heard pounding and yelling from the juvenile court holding cell. This individual discovered S.K. who was finally transported to the juvenile detention center. Shortly thereafter, when Deputy Menuey learned S.K. had been left in the courthouse, Deputy Menuey notified Plaintiff and confessed that she must have "spaced it off." (ECF No. 28 at 10.) Plaintiff expected that he and Deputy Menuey would probably be disciplined. Plaintiff said they needed to write statements documenting the incident. Deputy Menuey also notified Jail Commander Irene Brown of the incident with S.K.

The parties disagree about whether Plaintiff asked Fairey to draft a report the morning after the incident. (ECF No. 36, Ex. 1.) Fairey claims he wrote a memorandum only on August 10, 2013, but did not show it to Plaintiff. Plaintiff claims he reviewed a report Fairey drafted on August 2, 2013, that contained misrepresentations about Fairey's actions. (ECF No. 29, Ex. 1.)

### Process culminating in Plaintiff's discipline

On August 7, 2013, Chief Deputy John Laursen informed Plaintiff via letter that he would be placed on administrative leave pending an investigation of the S.K. incident. The investigation proceeded according to County policy. Sergeant Rocky Samuels interviewed Plaintiff on August 9, 2013. Sergeant Samuels submitted a report of his investigation to Commander Brown. The report indicates that Samuels interviewed the four deputies involved, interviewed the member of the cleaning staff who found S.K, and reviewed surveillance video from the courthouse.

On August 21, 2013, Commander Brown met with Plaintiff to provide him with a Notice of Pre-Disciplinary Hearing, which she also read to him. The Notice advised Plaintiff of the policies and procedures he may have violated and instructed him that he could bring evidence and witnesses to the pre-disciplinary hearing.

On August 26, 2013, Plaintiff, Deputy Menuey, Deputy Draper, and Fairey attended a joint pre-discipline hearing conducted by Commander Brown. Commander Brown heard testimony from all of the deputies. Defendants claim the deputies were "given the opportunity to present whatever evidence" they desired. (ECF No. 28 at 14.) Plaintiff's declaration submitted with his opposition to the summary judgment motion states "no video evidence from the incident at issue or reports were allowed to be presented at the hearing." (ECF No. 29, Ex. 1.) The transcript of the hearing does not suggest Commander Brown denied any request from Plaintiff or any other officer to submit video evidence or any report. (ECF No. 28, Ex. 6.) Rather, the transcript is devoid of any request to submit further evidence. *See infra* Part II.b.2.B.

Following the hearing, Commander Brown prepared a memorandum recommending discipline. She recommended Plaintiff be placed on probation for six months, reassigned from the courts to the jail, and demoted one rank to Corporal, including a pay reduction.

Chief Deputy Laursen reviewed Commander Brown's memorandum and listened to the audio recording of the August 26, 2013, hearing. Chief Deputy Laursen concurred in Commander Brown's recommendations and recommended extending the period of probation to one year. Plaintiff concedes that there is no affirmative evidence that either of these decision makers was biased against him. On September 3, 2013, Merrell met with Plaintiff and imposed the discipline recommended by Chief Deputy Laursen. Plaintiff claims Merrell told him later that

day "that the discipline was in retaliation for [Plaintiff's] efforts to campaign against [Merrell] during the election." (ECF No. 29, Ex. 1.) Defendants dispute this claim. (ECF No. 36, Ex. 2.)

### Post-discipline process

Also on September 3, 2013, Plaintiff submitted a grievance to H.R. Director Joe McKea ("McKea") claiming the discipline was excessive and based on "ulterior motive or retaliation." (ECF No. 28 at 15.) Plaintiff also requested that McKea disqualify himself from reviewing the grievance based on McKea's involvement in the discipline. McKea agreed to step aside. Uintah Roads Department Head Bryan Meier reviewed Plaintiff's grievance and conducted a review hearing with Plaintiff on September 12, 2013. Plaintiff admitted that he was responsible and deserved discipline for the incident on August 1, 2013. Plaintiff's declaration again claims that he "was not allowed to use any evidence other than testimony at the hearing with Bryan Meier." (ECF No. 29, Ex. 1.) Plaintiff does not claim he attempted to introduce any evidence and the transcript of the hearing does not reveal any such request. (*See* ECF No. 28, Ex. 4.) Bryan Meier upheld the discipline imposed on Plaintiff via letter dated September 16, 2013. Bryan Meier specifically stated he did not believe Merrell retaliated against Plaintiff.

On September 20, 2013, Plaintiff appealed to the Uintah County Commission. After reviewing the material in the file, the Commission (via letter dated September 24, 2013) supported the discipline imposed on Plaintiff.

On September 26, 2013, Plaintiff submitted a grievance appeal to the Uintah County Career Service Review Board ("CSRB" or "the Board"). The Board met informally with Plaintiff for over two hours on October 9, 2013, to discuss his grievance. Plaintiff was allowed to present any information, evidence, and argument he wished, though he claims he lacked access to unspecified recordings and reports he believes he needed. On November 12, 2013, McKea

delivered a letter to Plaintiff from the Board that contained its conclusions after meeting with Plaintiff. The Board notes in its letter that there was no dispute of material fact surrounding the August 1, 2013, incident. The Board's letter stated it found no indication the discipline imposed on Plaintiff was excessive or retaliatory. The Board's letter indicated Plaintiff could request a formal hearing if Plaintiff desired, but noted that the material facts were not in dispute and Plaintiff's character was not in question. The letter indicated that if Plaintiff desired a formal hearing before the Board, he must contact McKea no later than 4:00 p.m. on November 27, 2013. The parties dispute whether Plaintiff asked McKea for a formal hearing at the time McKea delivered the Board's letter. In any event, no other hearing was conducted before the Board.

On January 30, 2014, Plaintiff filed a lawsuit in Utah's Eighth District Court against Merrell and McKea. The suit was dismissed without prejudice on Defendants' motion. On September 8, 2014, Plaintiff filed a notice of claim pursuant to Utah's Governmental Immunity Act ("UGIA"). Plaintiff did not file the bond required by UGIA. On March 13, 2015, Plaintiff filed this lawsuit.

## **STANDARD OF REVIEW**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). To pierce qualified immunity, a plaintiff must demonstrate a defendant violated the plaintiff's constitutional right and that the right was clearly established. *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). While the Supreme Court formerly required trial courts to conduct this inquiry in a particular order, courts may now choose which prong to address first. *Riggins* at 1107 (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). Here, the court will first examine whether Plaintiff set forth a clearly-established right.

## I.     Defendants are Entitled to Qualified Immunity

### a.   Parties' arguments

Defendants argue Plaintiff cannot identify any clearly-established right that Defendants violated. (ECF No. at 32–33.) Plaintiff argues Merrell violated his clearly-established rights by disciplining Plaintiff "in retaliation for exercising his First Amendment rights . . . ." (ECF No. 29 at 20–21.) Plaintiff alleges that McKea violated his clearly-established rights by refusing to provide evidence to Plaintiff and refusing to afford Plaintiff a hearing before the CSRB. Finally, Plaintiff argues Fairey violated his clearly-established rights by lying in his written report "in an effort to help Defendants conceal it from [Plaintiff]." (*Id.* at 21.)

### b.   Plaintiff has not identified any clearly-established right

The clearly-established-right inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1108 (10th Cir. 2008). In the Tenth Circuit, "for a right to be clearly established, there must be a

Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation."

Plaintiff offers no authority to support his claim that a clearly-established right is implicated here. Plaintiff cites *Rossi v. University of Utah*, Civ. No. 2:15-767, 2016 WL 3570620 (D. Utah June 24, 2016),[1] for the standard applicable to clearly-established law, but he makes no attempt to define any clearly-established right using cases from the Tenth Circuit or Supreme Court. Plaintiff's failure to set forth a clearly-established right is fatal here.

Plaintiff asserts McKea violated his clearly-established rights by refusing to provide documents to Plaintiff. Yet, Plaintiff offers no case to establish he had a right to any documents. (Nor has Plaintiff offered any explanation of the utility of additional documents in a case where the underlying facts are not in dispute.) *See infra* Part II.b.2.

Similarly, Plaintiff has offered no case to suggest McKea's alleged refusal to allow Plaintiff a CSRB appeal on the record constitutes a violation of his clearly-established rights. Also, Plaintiff claims Fairey violated his clearly-established rights by lying in the August 2 report. Again, Plaintiff has not offered any case to support this argument. As discussed below, Plaintiff does not show this violates his due process rights, let alone a clearly-established right. *Infra* Part II.b.2.

Additionally, Plaintiff cites a case to support his substantive due process claim that involves a First Amendment violation rather than a due process violation. (*See* ECF No. 29 at 19) (citing *Adler v. Pataki*, 185 F.3d 35, 44–45 (2d Cir. 1999)). There are two problems with *Adler*. First, the case is not from the Supreme Court or Tenth Circuit, and it does not appear to evidence a

---

[1] *Rossi* is easily distinguishable because it was a decision made at the motion-to-dismiss stage of a lawsuit involving dismissal of a graduate student from her program. *See id.* at *1.

majority view held by other circuits. Second, the court cannot apply a First Amendment case to Plaintiff's substantive due process claim to forge a clearly-established due process right because a First Amendment claim is governed by another constitutional provision:

> "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."

*Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Plaintiff brings no First Amendment claim in this case. (*See* ECF No. 2.) Accordingly, *Adler* sets forth no clearly-established right applicable here because it does not set forth the Tenth Circuit, Supreme Court, or majority view. Further, even if *Adler* set forth a majority view, the First Amendment right is not relevant to this due process claims Plaintiff brings in this case.

Finally, at oral argument, Plaintiff was unable to describe any clearly-established right. Plaintiff made a number of general propositions the court may agree with, but stopped short of identifying a single clearly-established right applicable to the instant case. Accordingly, Plaintiff's claims fail because he fails to identify any clearly established right.

## II.    **Plaintiff Establishes no Violation of His Procedural Due Process Rights**

### a.   **Parties' arguments**

Defendants argue that Plaintiff's procedural due process claim fails for three reasons. (ECF No. 28 at 22–30.) First, Defendants argue Plaintiff failed to exhaust his administrative remedies because he did not request an evidentiary hearing after he received a November 12, 2013, letter from the Career Services Review Board ("CSRB"). Second, Defendants argue Plaintiff had no property interest in his job because he is an at-will employee. Third, Defendants argue that, even if Plaintiff has a property interest, he was afforded an appropriate level of process.

Plaintiff argues he made a written request to the CSRB for a hearing before he received the November 12 letter and requested a hearing orally from McKea again after receiving the letter. (ECF No. 29 at 12–13.) Plaintiff argues he has a property interest in his employment created by a Utah statute. (*Id.* at 13–15.) Finally, Plaintiff contends the process afforded was insufficient because he was not provided a full opportunity to present his case. (*Id.* at 15–17.)

### b. Plaintiff fails to show Defendants were required to afford him additional process related to his discipline.

#### 1. There is a factual dispute about whether Plaintiff requested a hearing, or did so properly

Defendants argue Plaintiff cannot assert a due process claim because he failed to exhaust state administrative remedies. *See, e.g.*, *Pitts v. Bd. of Educ. of U.S.D. 305, Salina, Kansas*, 869 F.2d 555, 556–57 (10th Cir. 1989) (holding plaintiff waived his right to challenge administrative procedures by failing to take advantage of administrative review). The parties agree that Plaintiff could have requested a full hearing before the CSRB. Defendants claim Plaintiff waived his right to that hearing because he did not contact McKea by November 27, 2013, to request a hearing. (ECF No. 28 at 24; ECF No. 36, Ex. 3.) Plaintiff's declaration submitted with his opposition memorandum claims he did ask McKea for a hearing on November 12, 2013. (ECF No. 29 at 12 & Ex. 1.) McKea filed a declaration stating Plaintiff never requested a hearing. (ECF No. 36, Ex. 3.) Defendants do not suggest that Plaintiff was required to request a hearing in writing. There is conflicting testimony about whether Plaintiff asked McKea for a hearing at the time he delivered the letter. This issue of fact precludes summary judgment on Defendants' claim that Plaintiff failed to exhaust his administrative remedies by not requesting a hearing before the CSRB.

2. *Plaintiff does not identify any violation of his procedural due process rights*

Plaintiff appears to argue that his post-termination process was inadequate. Plaintiff cites the rule for determining adequacy of administrative procedures, which requires consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996). Plaintiff argues his right to employment is substantial and that a formal CSRB hearing would have imposed almost no burden on Defendants. Defendants do not appear to argue otherwise. Thus, the first and third factors weigh in Plaintiff's favor.

The court turns to the second factor: risk of erroneous deprivation and utility of additional procedures. Plaintiff argues he was denied procedural due process because the discipline Merrell imposed was based on an admitted political bias, Plaintiff did not have access to certain documents, and McKea denied Plaintiff's request for a hearing before the CSRB.

### A. McKea's denial of CSRB hearing and access to documents

Plaintiff claims his lack of access to evidence deprived him of "an adequate and meaningful opportunity to build and present his case in his own behalf." (ECF No. 29 at 17.) The court is not persuaded by this argument. First, Plaintiff does not identify any utility in the evidence allegedly withheld. He does not explain what difference any evidence would have made. The underlying facts that resulted in Plaintiff's discipline appear undisputed. Second, Plaintiff cites no authority

to show he was entitled to additional evidence.[2] During oral argument Plaintiff made a blanket reference to the Constitution to support this argument. In response, the court notes there are a number of reasons a civil litigant may be denied access to evidence that do not rise to the level of a constitutional violation. *See generally* Civil Rule of Procedure 26 (discussing scope and limits of civil discovery, protective orders, and assertion of privilege). Thus, Plaintiff has not shown the alleged lack of access to evidence increased the risk of an unfair deprivation of his rights, nor that the additional evidence would have been useful.

Similarly, Plaintiff's argument regarding McKea's refusal to afford Plaintiff a second CSRB hearing is unpersuasive because Plaintiff does not explain the utility of this suggested additional process. The details of August 1, 2013, are not disputed now, nor do the materials submitted on summary judgment suggest they were disputed at the time of the administrative reviews. The only possible disagreement about the facts of August 1, 2013, is whether Fairey shared responsibility with Menuey to ensure S.K. was taken to detention. This dispute is immaterial because Plaintiff supervises both deputies. At oral argument, Plaintiff was not able to suggest any difference whether he was disciplined for failing to supervise both deputies rather than one. Thus, Plaintiff has not established that the denial of a CSRB hearing increased the risk of an erroneous decision, nor has he established the utility of a second CSRB hearing. While the court can easily imagine circumstances where refusal to hold a hearing could amount to a procedural due process violation, those circumstances are simply not present here.

Finally, Plaintiff claims that Merrell's admission of bias establishes a procedural due process violation. Yet, in the context of the law that Plaintiff cites, this argument is not persuasive. Notwithstanding Merrell's purported bias, the discipline he imposed was recommended by

---

[2] This underscores Plaintiff's failure to set forth any clearly-established right.

Commander Brown and Chief Deputy Laursen. After discipline was imposed, Bryan Meier, the County Commission, and the CSRB subsequently reviewed the discipline and Plaintiff's allegation of Merrell's bias. There is no evidence whatsoever that these individuals were biased. Given the review of Plaintiff's discipline by so many unbiased individuals, Plaintiff is unable to point to any further process he could reasonably request. Even assuming Merrell was biased, Plaintiff was afforded several levels of review before and after Merrell imposed discipline. In sum, Plaintiff has not shown any increased risk of an erroneous deprivation of his rights or that the CSRB hearing would have had any utility. The second factor weighs against Plaintiff.

Considering all three factors, the court concludes Plaintiff has not shown he was entitled to additional process. While his interests are substantial and the burden of additional procedures appears relatively minor, he has not shown the procedure afforded him increased the risk of an erroneous deprivation of his rights or that the additional procedure he requests would have utility. Accordingly, the court finds no violation of Plaintiff's procedural due process rights.

B. The court does not infer Commander Brown, Bryan Meier, the Commission, and the CSRB were biased based on the purported refusal to allow evidence

Plaintiff attempted to salvage this claim at oral argument by asking the court to infer that Commander Brown, Bryan Meier, the Commission, and the CSRB were biased because they denied him evidence, or the opportunity to submit evidence. First, Plaintiff has not created a genuine issue of material fact about whether he was not allowed to present evidence. Plaintiff's declaration states he was "not allowed" to present evidence during the hearings with Commander Brown and Bryan Meier. (ECF No. 29, Ex. 1.) The declaration fails to create a genuine dispute of material fact regarding the alleged refusal to admit evidence because the declaration lacks foundation, is conclusory and fails to explain or account for unchallenged record evidence. *See* Fed. R. Civ. P. 56(c)(4); *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 855 n.9 (1999) (concurring

with district court finding an affidavit submitted in opposition to summary judgment "unpersuasive because much of it is conclusory, vague, and/or lacking in foundation."). Plaintiff's declaration is unpersuasive because it fails to account for undisputed record evidence, including transcripts of the hearings at issue. The notice of hearing before Commander Brown (which Plaintiff signed on August 21, 2013) states he "may bring any evidence and/or witnesses which [he] may feel has pertinence or bearing on the allegations against [Plaintiff]." (ECF No. 28, Ex. 8 at 4.) The transcript of the hearing before Commander Brown is devoid of any request from Plaintiff, or the other deputies, to submit any evidence during the hearing. (*See* ECF No. 28, Ex. 6.) It is also devoid of any statement from Commander Brown that could be construed as refusing to accept evidence. Similarly, the transcript of the hearing before Bryan Meier reveals no request to submit evidence, let alone any disallowance by Bryan Meier to review evidence. (ECF No. 28, Ex. 4.) Plaintiff does not allege that he was disallowed from presenting evidence to the CSRB. Instead, he complains that he was denied access to evidence. Yet Plaintiff has shown no entitlement to that evidence, as discussed above. *See supra* Part II.b.2.A.

Second, even taking all of Plaintiff's statements as true, Plaintiff asks not for an inference, but speculation, which is insufficient to defeat a motion for summary judgment. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."). When asked, Plaintiff's counsel was unable to offer any evidence in the record to suggest these individuals were biased. Instead, counsel asked the court to "infer" that Merrell orchestrated a conspiracy involving each of these individuals and entities on the basis of the refusal to submit evidence at hearing, or provide evidence to Plaintiff. The court cannot reasonably make such an inference based only on a refusal to admit evidence. Instead,

even if credited, any refusal to admit evidence can easily be explained by undisputed nature of events of August 1, 2013. No evidence is needed in such a circumstance. Indeed, even under Plaintiff's version of events, the decision makers here accepted Plaintiff's testimony as evidence. Presumably, any bias in Plaintiff's own testimony cuts in his favor. Thus, in the absence of corroborative evidence, the court finds it cannot speculate as to improper motives of Commander Brown, Chief Deputy Laursen, Bryan Meier, the Commission, or the CSRB. Plaintiff seeks not an inferential step, but a hop, skip, leap, and a jump, which the court is unable to oblige.

### 3. Plaintiff is not an at-will employee

"[W]hen a person's employment can be terminated only for specified reasons, his or her expectation of continued employment is sufficient to invoke the protections of the Fourteenth Amendment." *Copelin-Brown v. New Mexico State Pers. Office*, 399 F.3d 1248, 1254 (10th Cir. 2005). The *Copelin-Brown* court found this requirement satisfied by a state statute providing that an employee could only be terminated for cause. *Id.* Here, the court finds the test is satisfied because Utah law provides that a Sheriff's Deputy may only be demoted, suspended, discharged, or have his pay reduced, for five reasons provided by statute. *See* Utah Code Ann. §§ 17-30-18(1) & 17-30a-402(1). Defendants' do not address the statutes in their reply. Thus, Plaintiff has a property interest in his employment by virtue of Utah law.

### III. **Plaintiff Does Not Establish any Substantive Due Process Violation**

#### a. **Parties' arguments**

Defendants argue that Plaintiff cannot show that their actions were arbitrary or shocking to the conscience. (ECF No. 28 at 30–31.) Also, Defendants argue that the due process claims should be dismissed as to McKea and Fairey in their individual capacities because they are not policymaking officials. (*Id.* at 33–35.)

Plaintiff argues that his discipline was arbitrary and capricious because Merrell told Plaintiff his discipline was imposed as retaliation for Plaintiff campaigning against Merrell during an election. (ECF No. 29 at 17–20.) Plaintiff also contends Defendants misread the authority on which their argument about policy-making officials relies and that even the authority they cite suggests McKea is a policymaking official.

### b. Plaintiff does not point to any evidence of conduct that shocks the judicial conscience

The standard to establish a substantive due process violation is exacting:

> The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges. Conduct that shocks the judicial conscience . . . is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice. To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employ[ed] it as an instrument of oppression. The behavior complained of must be egregious and outrageous.

*Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013) (citations and quotations omitted).

#### 1. Plaintiff does not describe arbitrary conduct by McKea or Fairey

First, there is no factual dispute about whether any defendant other than Merrell engaged in arbitrary conduct. Merrell's conduct cannot be imputed to any other individual Defendant. Instead, Plaintiff "must establish that each defendant—whether by direct participation or by virtue of a policy over which he possessed supervisory responsibility—caused a violation of [his] clearly established constitutional rights, and that each defendant acted with the constitutionally requisite state of mind." *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013). Taken as a whole, the process here was not arbitrary or conscience shocking. Plaintiff offers no basis to impute Merrell's conduct to other Defendants.

## 2. *Merrell's conduct does not shock the conscience*

Next, while Merrell imposed discipline, at least in part, for an arbitrary reason; Plaintiff has not offered any evidence of behavior that shocks the conscience. "Conduct that shocks the judicial conscience . . . is deliberate government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008). Plaintiff cites a number of cases that have colorful language but none of them describe conduct that shocks the conscience. Plaintiff also made impassioned statements during oral argument, but ultimately did not offer any analysis to show that the events here meet the high standard of conduct shocking to the conscience. Plaintiff argues Merrell's alleged admission that he disciplined Plaintiff for political activity constitutes arbitrary decision making. Taking Plaintiff's declaration as true, the court agrees that Merrell disclosed a motive for imposing discipline that fits the plain meaning of the word arbitrary. Notwithstanding the court's partial agreement, it is unable to find for Plaintiff for two reasons.

First, Merrell's statement does not make the discipline itself arbitrary. Even assuming Merrell had improper and arbitrary motives, the discipline imposed came recommended from others who were not biased and his decision was reviewed by several others who did not make an arbitrary decision. Several individuals reviewed Plaintiff's case. Commander Brown recommended discipline similar to what Merrell imposed. Chief Deputy Laursen recommended discipline identical to what Merrell imposed. Bryan Meier, the County Commission, and the CSRB upheld Merrell's discipline and rejected Plaintiff's claim of bias. In other words, despite Merrell's purported bias, he only imposed discipline recommended by unbiased decision makers and the discipline was subsequently upheld by other unbiased decision makers.

Second, case law indicates the standard for a substantive due process claim is higher than arbitrary conduct or even intentional wrongdoing. *See id.*; *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) ("a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power."). "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* "This is a 'high level of outrageousness.'" *Id.* (quoting *Uhlrig v. Harder*, 64 F.3d 567 (10th Cir. 1995)). The conduct Plaintiff refers to may be arbitrary under the plain meaning of the word, but he offers no argument or case law to suggest it meets the applicable legal standard of conduct that shocks the judicial conscience. In fact, Plaintiff does not cite a single case in which a court found a defendant acted in a manner that shocked the judicial conscience.[3] Merrell's comment suggests he derived some improper pleasure from the discipline or imposed it for an improper motive. Yet Merrell's action resulted in little harm to Plaintiff and certainly no harm shocking to the judicial conscience. Thus, Merrell's comment, combined with discipline recommended and upheld by unbiased third parties, does not "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.*

A. The court must believe Merrell's declaration at this stage

Defendants argue Plaintiff's declaration is conclusory and should not be considered. (ECF No. 36 at 20–21.) Defendants point out that Plaintiff never mentioned this alleged conversation during his post-disciplinary appeals and has offered no detail of the alleged conversation with Merrell. Merrell denies having this conversation. (*See* ECF No. 36, Ex. 2.) Unlike statements in Plaintiff's declaration mentioned earlier, the court finds no reason to reject Plaintiff's claim that

---

[3] This lack of authority further highlights Plaintiff's failure to set forth a clearly-established substantive due process claim.

Merrell was biased. While Defendants identify a number of reasons a jury might not credit the declaration, they have not shown the court may disregard it. Instead, the declaration is entitled to the credit ordinarily afforded the non-movant's evidence on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Plaintiff's declaration is consistent with his deposition testimony. (ECF No. 29, Ex. 2 at 63:3–13) (Plaintiff testified there were political motives behind his discipline "because Sheriff Jeff Merrell told [Plaintiff] so himself."). There does not appear to be any unbiased evidence that refutes Plaintiff's claim that Merrell admitted he disciplined Plaintiff for political reasons. Instead, this is a classic jury issue involving the credibility of witnesses with conflicting testimony.

## B. Plaintiff cites inapplicable law

Plaintiff cites several employment-retaliation cases for the proposition that the court may infer retaliatory motive when "protected conduct [is] closely followed by adverse [employment] action." (ECF No. 29 at 18) (quoting *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324 (10th Cir. 1996)). Plaintiff does not explain why the court should apply the employment-retaliation standard to his claim alleging violation of his right to substantive due process.

Additionally, Plaintiff cites a First Amendment case from the Second Circuit (ECF No. 29 at 19), but, as mentioned earlier, the court may not apply a substantive due process analysis to a claim that is governed by another constitutional provision:

> "[w]here a particular Amendment provides an explicit textual source of
> constitutional protection against a particular sort of government behavior, that
> Amendment, not the more generalized notion of substantive due process, must be
> the guide for analyzing these claims."

*Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).

*3. The policymaker doctrine does not impact individual liability.*

Defendants appear to misapply the policymaker doctrine. Under that doctrine, a municipality may only be held liable for an individual employee's actions if the employee had final policymaking authority. *Starrett v. Wadley*, 876 F.2d 808, 818 (10th Cir. 1989) ("if a county official has been delegated the power to make *final policy* in an area of the county's business, then the official's acts *in that area* are the acts of the county."). It is thus unclear why Defendants believe this doctrine can somehow absolve Fairey and McKea of individual liability. The court concludes it does not.[4]

**IV.** **There was no Obvious Need to Train Fairey**

    **a. Parties' arguments**

Defendants argue Plaintiff cannot meet the requisite standard to establish a failure to train actionable under § 1983. Defendants argue that Plaintiff must establish the County acted with "deliberate indifference" to succeed on his claim. (ECF No. 28 at 36.) Plaintiff argues that the lack of written materials setting forth courthouse procedures establishes a willful lack of care on the County's part. (ECF No. 29 at 23.)

    **b. Plaintiff offers no evidence that Defendants were deliberately indifferent to any need to train Defendant Fairey**

Plaintiff has not offered any evidence that the need to train Deputy Fairey was obvious. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so

---

[4] At oral argument, Defendants conceded Merrell is a policy-making official. (ECF No. 39.)

likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. Here, Plaintiff merely points to a lack of written procedures and concludes, without citation, that a reasonable jury could find the County exhibited a willful lack of care. Plaintiff does not in any way describe how the need for more or different training should have been obvious. Thus, Defendants should be granted summary judgment on Plaintiff's cause of action for failure to train.

Additionally, Defendants point out the oddity of Plaintiff asserting that Uintah County's system failed to train deputies when Plaintiff admitted at the administrative level that it was his ordinary practice to check the monitors for the holding cells before leaving for the night. Defendants argue that this demonstrates the County had an adequate procedure to train its deputies. The County trained Plaintiff who was expected to then pass the training on to his subordinates. Plaintiff does not respond to this argument. These circumstances tend to suggest the County had an adequate training program because the person in charge (Plaintiff) knew he should check the monitors before leaving. In the absence of contrary evidence, the court agrees.

V. **Plaintiff's State-Constitution Claim Must be Dismissed for Failure to Comply with the Bond Requirement in Utah's Governmental Immunity Act**

a. **Parties' arguments**

Defendants argue Plaintiff's claims are precluded by Utah's Governmental Immunity Act ("UGIA") because Plaintiff failed to submit his notice of claim within one year of the date on which his claim arose. (ECF NO. 28 at 40–41.) Defendants contend Plaintiff's claim arose on September 3, 2013, the date on which he was demoted and placed on probation. Defendants also argue that Plaintiff's claim should be dismissed because he failed to file a bond. (*Id.* at 41–42.)

Plaintiff argues that the date on which he filed his notice of claim, and any lack of bond, is not relevant because UGIA does not apply to § 1983 claims. (ECF No. 29 at 25.) Alternatively,

Plaintiff argues that his claim was not complete until McKea denied Plaintiff's request for a hearing before the CSRB on November 12, 2013. (*Id.* at 26.)

### b. Plaintiff's state claims must be dismissed without prejudice for failure to comply with UGIA

A plaintiff bringing a § 1983 claim need not comply with state notice-of-claim requirements. *Felder v. Casey*, 487 U.S. 131, 153 (1988). Defendants appear to acknowledge this much in their reply brief. (*See* ECF No. 36 at 21.) Thus, regardless of the date on which this claim arose, UGIA does not preclude plaintiff's § 1983 claims.

Nonetheless, to the extent Plaintiff's third cause of action alleging due process violations under Utah's constitution attempts to set forth a state claim, it must be dismissed for failure to file an undertaking required by Utah law. UGIA requires Plaintiff to file an undertaking (bond) of at least $300 to guarantee taxable costs in the event Plaintiff fails to prosecute the action or fails to obtain a judgment. *See* Utah Code Ann. § 63G-7-601 (2016). Utah law requires another bond as a condition precedent to filing suit against a law enforcement officer. *See* Utah Code Ann. § 78B-3-104. These bond requirements are strictly enforced, mandating dismissal where the bond is not filed prior to the lawsuit. *See Rippstein v. City of Provo*, 929 F.2d 576, 578 (10th Cir. 1991) ("the appropriate remedy for failure to make a timely filing of an undertaking under section 63[G-7-601] is dismissal without prejudice."); *Craig v. Provo City*, 389 P.3d 423, 424 (Utah 2016). Strict compliance with UGIA is required for all state claims, including claims brought pursuant to the state constitution. *See Patterson v. Am. Fork City*, 67 P.3d 466, 472 (Utah 2003). Plaintiff does not argue against dismissing his state-constitution claim for failure to file a bond as required by UGIA. Plaintiff conceded at oral argument that he did not file the requisite bond. Thus, his third cause of action for due process violations under the Utah constitution must be dismissed without prejudice.

Given the court's decision regarding the bond requirement, the court does not reach the issue of whether the notice of claim was filed timely. Also, based on the court's dismissal of all claims against all individual Defendants, the County must also be dismissed. *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1223 (10th Cir. 2006) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

## VI.    Punitive Damages

Plaintiff's claim for punitive damages hinges on the success of his claims above. *See Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991) ("A punitive damage claim is not an independent cause of action or issue separate from the balance of a plaintiff's case.") The evidence here does not support Plaintiff's claims. Thus, he cannot recover punitive damages.

## CONCLUSION

In sum, Defendants are entitled to summary judgment on all claims because he has not set forth any clearly-established right. Alternatively, his claims should be dismissed because he has not raised a genuine issue of material fact bearing on whether his alleged rights were violated and because he did not file the requisite bond before filing his state claims.

The court notes that its finding that Defendants did not deprive Plaintiff of due process should be read narrowly under the unique facts of this case. This decision does not immunize use of a biased decision maker. Instead, the court finds no procedural due process violation in this case because Plaintiff was afforded sufficient process both before and after the decision made by the purportedly-biased intermediate decision maker. It is important to the court's decision here that the discipline imposed was identical to what was recommended by an unbiased party before it was imposed, and upheld on review by other unbiased parties. Further, the underlying facts of the discipline were not at issue; only the severity of the discipline.

Similarly, the court finds no procedural due process violation despite Sherriff Merrell's purportedly-confessed arbitrary motive. The court does so because precedent requires more than arbitrary motive of a single intermediary to impose liability for a substantive due process violation. To recover under substantive due process, Plaintiff must show conduct that shocks the judicial conscience. The conduct here does not rise to that level because, even assuming Merrell was biased, he only imposed the discipline recommended by unbiased decision makers and as later upheld by additional unbiased individuals. The outcome may well have been different if Merrell had increased the discipline, or had heard Plaintiff's final appeal.

Finally, the court is sympathetic to Plaintiff's concerns. The court understands that Plaintiff believes his discipline was disproportionate to his conduct, particularly compared to other deputies. It may be disproportionate. The court's role is not to decide whether that is true. "Federal courts do not sit to second guess state decisions on the merits of a discharge decision, but only to ensure that employees are provided due process when the decision is made." *Pitts v. Bd. of Educ. of U.S.D. 305, Salina, Kansas*, 869 F.2d 555, 557 (10th Cir. 1989). Given a reviewing court's role, municipalities have latitude to discipline employees in ways that are not entirely fair. They can certainly impose discipline with which the court does not agree. The court may only intervene when the unfairness in the process rises to the level of a constitutional violation. This case does not rise to that level.

## **ORDER**

For the reasons set forth above, the Court **GRANTS** Defendants' summary judgment motion.

(ECF No. 28.)

This case is closed.

Dated this 1st day of May 2017.          By the Court:

_____
Dustin B. Pead
United States Magistrate Judge